IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

ERLE L. BARR,

        Plaintiff,                       No. CIV S-07-0284 GGH

       vs.

MICHAEL J. ASTRUE,
Commissioner of Social
Security,                                <u>ORDER</u>

        Defendant.
                               /

        Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying plaintiff's application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("Act"). For the reasons that follow, plaintiff's Motion for Summary Judgment and/or Remand is granted, the Commissioner's Motion for Summary Judgment is denied, and this matter is remanded to the ALJ for further findings as directed in this opinion. The Clerk is directed to enter judgment for plaintiff.

<u>BACKGROUND</u>

        Plaintiff, born November 12, 1953, applied for disability benefits on June 30, 2003. (Tr. at 47.) Plaintiff alleged he was unable to work since April 1, 2004, due to

\\\\\

meningioma,[1] grand mal seizures, diabetes, Meniere's disease with severe vertigo, peripheral neuropathy in the feet, and degenerative disc disease. (Tr. at 47, 124.)

In a decision dated July 21, 2006, ALJ Mark C. Ramsey determined that plaintiff was not disabled.[2] The ALJ made the following findings:

    1.    The claimant has not engaged in substantial gainful activity since the alleged onset of disability.

    2.    The claimant's obesity, diabetes mellitus, degenerative disc disease, and vertigo/seizure disorder are considered "severe" based on the requirements in the Regulations (20 CFR § 416.920(c).

    3.    This medically determinable impairments do not meet or medically equal one of the listed impairments in Appendix

---

[1] Meningioma is a brain tumor which is usually benign but may be malignant. www.wikipedia.org.

[2] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. § 401 et seq. Supplemental Security Income is paid to disabled persons with low income. 42 U.S.C. § 1382 et seq. Both provisions define disability, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment. . . ." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A parallel five-step sequential evaluation governs eligibility for benefits under both programs. See 20 C.F.R. §§ 404.1520, 404.1571-76, 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S. Ct. 2287 (1987). The following summarizes the sequential evaluation:
    Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
    Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
    Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
    Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
    Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.
Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).
    The claimant bears the burden of proof in the first four steps of the sequential evaluation process. Bowen, 482 U.S. at 146 n.5, 107 S. Ct. at 2294 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. Id.

        1, Subpart P, Regulation No. 4.

4.    The undersigned finds the claimant's allegations regarding his limitations are not totally credible for the reasons set forth in the body of the decision.

5.    The claimant has the following residual functional capacity: he can perform light work, or work involving lifting and/or carrying up to 20 pounds occasionally and 10 pounds frequently, standing/walking up to six hours per day, and sitting up to six hours per day (20 CFR §§ 416.967(b), 404.1567(b)). He should also avoid exposure to dangerous machinery and unprotected heights.

6.    The claimant has no past relevant work (20 CFR § 416.965).

7.    The claimant is a person closely approaching advanced age (20 CFR § 416.963).

8.    The claimant has "a limited education" (20 CFR § 416.964).

9.    The claimant has no transferable skills from any past relevant work and/or transferability of skills is not an issue in this case (20 CFR § 416.968).

10.    The claimant has the residual functional capacity to perform substantially all of the full range of light work (20 CFR § 416.967).

11.    Based on an exertional capacity for light work, and the claimant's age, education, and work experience, Medical-Vocational Rule 202.10, Appendix 2, Subpart P, Regulations No. 4 would direct a conclusion of "not disabled."

12.    The claimant's capacity for light work is substantially intact and has not been compromised by any nonexertional limitations. Accordingly, using the above-cited rule(s) as a framework for decision-making, the claimant is not disabled.

13.    The claimant was not under a "disability," as defined in the Social Security Act, at any time through the date of this decision (20 CFR § 416.920(g)).

(Tr. at 21-22.)

\\\\\

3

ISSUES PRESENTED

Plaintiff has raised the following issues:  A.  Whether the ALJ Erred in Failing to Consider Plaintiff's Disk Disease of the Spine and Obesity as Severe Impairments;  B.  Whether the ALJ Provided a Faulty Assessment of Plaintiff's Residual Functional Capacity; and C. Whether the ALJ Improperly Rejected Plaintiff's Credibility.

LEGAL STANDARDS

The court reviews the Commissioner's decision to determine whether (1) it is based on proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in the record as a whole supports it. Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir.1999). Substantial evidence is more than a mere scintilla, but less than a preponderance. Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996).  "'It means such evidence as a reasonable mind might accept as adequate to support a conclusion.'" Richardson v. Perales, 402 U.S. 389, 402, 91 S. Ct. 1420 (1971), quoting Consolidated Edison Co. v. N.L.R.B., 305 U.S. 197, 229, 59 S. Ct. 206 (1938). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted).  "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." Thomas v. Barnhart, 278  F.3d 947, 954 (9th Cir. 2002).

ANALYSIS

A.  Whether Plaintiff's Degenerative Disk Disease and Obesity Constitute Severe Impairments Under Step Two

Plaintiff first contends that in considering plaintiff's impairments at step two, the ALJ failed to consider plaintiff's back problems and obesity as severe impairments.

An impairment is not severe only if it "would have no more than a minimal effect on an individual's ability to work, even if the individual's age, education, or work experience were specifically considered." SSR 85-28.  The purpose of step two is to identify claimants

4

whose medical impairment is so slight that it is unlikely they would be disabled even if age, education, and experience were taken into account. Bowen v. Yuckert, 482 U.S. 137, 107 S. Ct. 2287 (1987). "The step-two inquiry is a de minimis screening device to dispose of groundless claims." Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996).

The ALJ did find plaintiff's degenerative disc disease and obesity to be severe impairments in enumerated finding number 2. (Tr. at 21.) Therefore, this issue need not be addressed further. To the extent that plaintiff argues that the ALJ should have considered these impairments in regard to his residual functional capacity, this issue will be addressed in the next section.[3]

B. Residual Functional Capacity

Plaintiff claims that the ALJ's finding that plaintiff could do the full range light work is contradicted by several factors relating to plaintiff's back problems and respiratory impairments.

First, plaintiff claims that MRI findings demonstrated degenerative disk disease in the entire spine and most notably the cervical spine. In this regard, the ALJ did consider the MRI referred to by plaintiff and described it:

> A June, 2005 MRI showed no cord compression or thoracic cord lesions, mild degenerative changes of the thoracic spine, degenerative changes of the cervical spine with reversal of normal cervical lordotic curvature and severe spinal stenosis at C5-6 and moderate spinal stenosis at C6-7 and bilateral foraminal narrowing at C5-6 and C6-7; also grade 1-2 anterolisthesis of L5 over S1, bilateral spondylosis at L5, anterior wedging of the T11, T12, and L1 vertebrae, chronic; prominent epidural fat in mid inferior lumbar and sacral spinal canal and narrowing of diameter of the thecal sac at L3-4, L4-5, and L5-S1 levels; and no significant canal

---

[3] Plaintiff refers in passing to a case where the ALJ failed to consider the combination of all of plaintiff's impairments and alludes to such an issue in this case by stating, "[t]his appears appropriate in Plaintiff's claim as well." Pl.'s Mot. at 19. This passing comment is the sum total of his argument and will therefore not be considered. Bare contention, unsupported by explanation or authority, may be deemed waived. See Seattle School Dist., No. 1 v. B.S., 82 F.3d 1493, 1502 (9th Cir. 1996) (party who presents no explanation in support of claim of error waives issue).

5

stenosis at lumbar levels and no disc extrusion (Exhibit 11-F: 3-5).
(Tr. at 18.)

The ALJ accurately described this MRI, dated June 23, 2005, but minimized its severity. (Tr. at 309-11.) The ALJ also relied on Dr. Freeman's exam and Shasta Community Health records rather than the functional limitations of plaintiff's treating source, Everett Houston, FNP, which he rejected. Dr. Freeman's exam was conducted on November 13, 2004, some seven months prior to the MRI, and about a year and four months prior to Mr. Houston's RFC. He found, after examining plaintiff and reviewing his medical records, that plaintiff had chronic low back pain, neuropathy, diabetes, substance abuse,[4] meningioma, and seizure disorder. (Tr. at 240.) The exam of the back revealed limited range of motion with diminished forward flexion by 40 percent. (Id. at 242.) This internist concluded that plaintiff could carry up to twenty pounds occasionally, ten pounds frequently, sit for eight hours, and stand for six hours. In regard to the seizure disorder, it was recommended that plaintiff not operate heavy machinery, weapons or motor vehicles. (Id. at 243.)

The Shasta Community Health records also relied on by the ALJ include a July 29, 2005 report by family nurse practitioner (FNP) Houston and signed by Dr. Demoraes, stating that plaintiff has degenerative disk disease with anterolistesis at L5-S1, which is stable on flexion and extension, but is a grade 2. (Id. at 326.) This report is probably based on the aforementioned MRI which actually rated the anterolisthesis at grade I-II, rather than grade II. (Tr. at 310.) A report dated April 7, 2005, stated that plaintiff was doing well with his low back pain and was

---

[4] Plaintiff's substance and alcohol abuse have been mentioned a few times in the record and acknowledged by the ALJ. (Tr. at 240, 321, 322, 19.) Plaintiff reported to Dr. Freeman that he last used crank in 2003 and last abused alcohol in 1999, whereas plaintiff's treating source and ALJ frame the abuse in the present tense. It is not clear whether plaintiff has recovered for a sufficient time such that drug/alcohol abuse would not interfere with his ability to work. However, plaintiff, of course, does not raise the issue as to do so may well preclude benefits on a per se basis. The ALJ has not analyzed the issue. See Bustamante v. Massanari, 262 F.3d 949 (9th Cir. 2001). Nevertheless, no one raises the drug/alcohol issue, and the court will not raise it sua sponte.

stable. (Id. at 335.) It was recommended that plaintiff continue with his current treatment which included Ibuprofen, Vicodin, back brace, TENS unit, and further evaluation. (Tr. at 335, 329, 325, 327.) These treating records do not include any RFC assessment. (Tr. at 314-53.)

The report which the ALJ refused to accept was authored by FNP Houston without review by a medical doctor. (Tr. at 312-13.) It is the most recent report, dated March 8, 2006, and states that plaintiff's flexion, extension, and lateral bending on both sides was 30 degrees only. Plaintiff was found to be able to walk on his heels and toes poorly, could not squat and could not rise from a squatting position. (Id. at 312.) He also had reduced sensation and/or reflex loss due to lower back problems. This report found that plaintiff's impairments in combination equaled a listed impairment. (Id. at 313.) The ALJ explained away this report by stating that the MRI indicated normal sensation with no nerve damage. (Id. at 18-19.) The ALJ also referred to other records indicating normal straight leg raises and heel to toe and tandem walk. (Id. at 19.) Based on these reasons, as well as plaintiff's active lifestyle, discussed *infra*, the ALJ rejected this assessment.

It is true, as defendant contends, that this assessment is deserving of less weight because it was written by a nurse practitioner who is not considered an acceptable medical source, but only an "other source." 20 CFR § 416.913(a), (d)(1) (2008). It nevertheless raises questions about a possible worsening in plaintiff's condition and may be more consistent with the MRI that was taken after Dr. Freeman's exam.

Other records submitted after the ALJ decision but considered by the Appeals Council include a physical therapy report from August 1, 2006 wherein the therapist, Jim Girt, stated that even if plaintiff could "alternate sitting and standing postures as tolerated, it does not appear as though Erle can perform work at a Sedentary Physical Demand Level for long enough periods to be productive." (Tr. at 401.) Plaintiff had could only sit for thirty minutes continuously and stand for ten minutes continuously. He could only walk for five minutes continuously. It was very difficult for him to bend and squat, and kneeling was difficult. (Id.)

7

1              Plaintiff had also submitted a report dated July 28, 2006 by nurse practitioner
2    Chicargulin which was a pulmonary residual functional capacity questionnaire.  At that time,
3    plaintiff's symptoms were shortness of breath, wheezing, episodic acute asthma, and coughing.
4    (Tr. at 406.)  Plaintiff had been hospitalized one time for acute asthma.  (Id.)  He was having
5    asthma attacks every two to six weeks.  This nurse practitioner thought his persistent dyspnea and
6    COPD would interfere frequently with plaintiff's attention and concentration to perform even
7    simple tasks.  (Id. at 407, 409).  She thought plaintiff was incapable of even low stress jobs as a
8    result, and his prognosis was only fair.  (Id. at 407.)  She opined that plaintiff could walk one city
9    block without feeling pain or having to rest.  He could sit for only ten minutes at a time before
10   needing to get up; he could stand for ten minutes at a time.  He could sit and stand/walk for a
11   total of only two hours in a day.  He would have to take unscheduled breaks every one to two
12   hours in a work day.  (Id. at 408.)  Ms. Chicargulin thought plaintiff could lift less than ten
13   pounds rarely, climb stairs rarely, and never stoop, crouch, or climb ladders.  (Id.)  He should
14   avoid all exposure to environmental irritants.  The nurse practitioner she thought plaintiff would
15   miss more than four days per month of work.  (Id. at 409.)  Again, this report was authored by an
16   "other source" and is deserving of less weight, but it does raise the question of further
17   development of the record.
18              Plaintiff claims that the ALJ did not consider the seriousness of plaintiff's
19   treatment which included narcotic pain relievers, muscle relaxants, a back brace and a TENS
20   unit.  The ALJ did discuss the TENS unit, and specifically noted that it apparently worked well
21   as plaintiff felt well enough after using it to go hunting and lift mattresses.  (Tr. at 18.)
22   According to the ALJ, plaintiff did experience pain as a result of hunting, but returned to this
23   sport "in short order."  (Id.)  This characterization is based on medical reports indicating that
24   plaintiff went hunting before a medical visit on September 21, 2004, but experienced back pain,
25   and he went hunting again before an October 12, 2004 visit but got a rash.  (Tr. at 237, 251.)  At
26   hearing, however, plaintiff recounted his hunting experience a little differently.  He testified that

1 he tried to go hunting, but ended up with bad stomach problems which kept him from getting out
2 of the truck, and then kept him in bed in the camp for two days.  He did not actually hunt.  (Tr. at
3 418-19.)

4 　　Plaintiff did wear a back brace at the hearing and his attorney questioned him
5 about it.  (Id. at 430-31.)  The ALJ did not mention the back brace; however, the ALJ is not
6 required to discuss every piece of evidence, but the record does need to demonstrate that he
7 considered all of the evidence, and in this case it does not.  Clifton v. Chater, 79 F.3d 1007,
8 1009-10 (10th Cir. 1996) (finding ALJ's summary conclusion that appellant's impairments did
9 not meet or equal any Listed Impairment was a bare conclusion beyond meaningful judicial
10 review).

11 　　Of particular concern is the ALJ's statement that plaintiff was only taking
12 Ibuprofen when the records indicated prescriptions for narcotics such as vicodin and/or
13 methadone in addition to the ibuprofen.  (Tr. at 18, 324, 315, 329, 122.)  Although plaintiff
14 reported to Dr. Freeman in 2004 that he took only Ibuprofen for his back, he testified over a year
15 and four months later at hearing that he had taken vicodin and then switched to methadone which
16 gave him a bad reaction so he is waiting for a prescription for a new morphine type drug.  (Tr. at
17 240, 420-421.)  Plaintiff testified that his pain was a lot worse now without the narcotic
18 prescription.  (Id. at 426.)  The ALJ in fact made the decisive mistake of stating, "I think it is of
19 critical importance [in reaching his conclusion of no disability] that the claimant treats his pain
20 with only ibuprofen (Exhibit 6-F).  It is reasonable to assume that if his pain from neuropathy,
21 headaches, or back pain were truly debilitating, he would pursue more aggressive pain
22 management."  (Tr. at 19-20.)  The ALJ made this statement, referring to Dr. Freeman's report
23 of ibuprofen only, (Ex. 6-F), despite various other records indicating narcotic drugs for pain, as
24 well as plaintiff's own consistent testimony.  Because the ALJ relied and placed great weight on
25 this factual error, his decision is not supported by substantial evidence and remand is required.
26 \\\\\

Other errors are also apparent in the ALJ's decision. Dr. Freeman's opinion, the one on which the ALJ placed the most weight, is also one of the oldest reports and pre-dates the MRI. This MRI indicates especially severe problems in the cervical region, and the ALJ, although acknowledging this report, appears to have given it little consideration in determining that plaintiff could do light work. It is also unclear whether the guidelines can be relied on when there are limitations in neck mobility, if indeed there are. Therefore, it may well be advisable for the ALJ to obtain a more recent consulting specialist to interpret the MRI, especially in regard to any potential cervical restrictions.

The ALJ also failed to properly analyze plaintiff's obesity at all steps in the sequential analysis. Obesity must be considered as a factor contributing to disability, unless the ALJ makes a specific factual finding based on substantial evidence that the obesity is remediable. Dodrill v. Shalala, 12 F.3d 915, 919 (9th Cir. 1993). SSR 02-01p makes clear that obesity is a disease that must be considered when evaluating disability, and the "combined effects of obesity with other impairments can be greater than the effects of each of the impairments considered separately." The ALJ "will evaluate each case based on the information *in the case record*." (Id.) (emphasis added). Even if it is ultimately determined that listing equivalence is not satisfied, the ALJ must take into account the fact of obesity at the other levels of the sequential analysis. At step four and five of the sequential analysis, the ALJ should consider obesity in determining RFC and vocational ability:

> According to the Social Security Rules, in evaluating obesity to determine a claimant's RFC, the ALJ's assessment 'must consider an individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis.' SSR 02-01p (2002). As with other impairments, the ALJ should explain how he determined whether obesity caused any physical or mental impairments. *See id.*

Burch v. Barnhart, 400 F.3d 676, 683 (9th Cir. 2005).

At 69 inches and 275 pounds, plaintiff is morbidly obese. www.nhlbisupport.com/bmi/ ; www.wikipedia.org. Although the ALJ found obesity to be a

severe impairment, and mentioned in passing that his obesity "probably exacerbates his sleep apnea" and "also probably exacerbates his back pain," he did not really analyze its impact on plaintiff's residual functional capacity. (Tr. at 18.) This condition has the capacity to affect many aspects of plaintiff's functioning in areas where he is already having problems, such as degenerative disk disease, diabetes, and asthma.

It is true that the ALJ did not have the medical records regarding plaintiff's breathing problems and mobility restrictions from NP Chicargulin and PT Girt respectively, and they were considered by the Appeals Council. Nevertheless, these records may impact the ALJ's obesity analysis on remand. It is acknowledged that these late submitted reports were provided by a physical therapist and a nurse practitioner, both of whom are not acceptable medical sources, and therefore are accorded less weight as "other source[s]." 20 CFR § 416.913(a), (d)(1) (2008). Nevertheless, they do raise this question of whether the record has been sufficiently developed, especially in regard to plaintiff's COPD, asthma and physical mobility. The ALJ rejected plaintiff's asthma in a perfunctory manner by stating that because plaintiff was not receiving treatment for it, it does not impose a severe impairment. (Tr. at 20.) To the contrary, plaintiff's medication list, dated February 22, 2005, includes Advair and Albuterol. (Tr. at 122.) Dr. Freeman did not focus on plaintiff's asthma because it was not listed as an illness, and did not appear to be a problem in 2004 at the time of this visit. (Tr. at 240.) It is quite possible that this condition can be better controlled. The court gives no opinion on the matter. However, the main medical source relied upon by the ALJ did not have the benefit of examining this problem. The physical therapist's physical restrictions contradict Dr. Freeman's assessment and the ALJ's finding that plaintiff can do light work. On remand the ALJ should include these later reports in his analysis and determine whether to obtain further evidence or consultation.[5]

---

[5] Plaintiff also challenges the ALJ's credibility finding. Because the matter is being remanded for further proceedings, the court will not reach this argument. However, on remand, if plaintiff's testimony regarding his subjective complaints is discredited, the ALJ must, in the

CONCLUSION

Accordingly, plaintiff's Motion for Summary Judgment and/or Remand is GRANTED in part pursuant to Sentence Four of 42 U.S.C. § 405(g), the Commissioner's Cross Motion for Summary Judgment is DENIED, and this matter is remanded for further findings in accordance with this order.  The Clerk is directed to enter Judgment for plaintiff.

DATED: 08/07/08

/s/ Gregory G. Hollows

GREGORY G. HOLLOWS
U.S. MAGISTRATE JUDGE

GGH/076
Barr0284.ss.wpd

---

absence of affirmative evidence showing that plaintiff malingering, set forth clear and convincing reasons for rejecting plaintiff's testimony." Morgan v. Commissioner of Social Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999).